IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JOSEPH R.,<br>　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>　　　Defendant. | Case No. 4:19-cv-04255-SLD-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 10) and the Defendant's Motion for Summary Affirmance (Doc. 14). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Plaintiff Joseph R. filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) in May 2016, alleging disability beginning on June 1, 2015. His claims were denied initially on October 3, 2016 and upon reconsideration on December 30, 2016. Joseph filed a request for hearing concerning his DIB and SSI applications which was held on May 21, 2018 before the Honorable Gerard J. Rickert (ALJ). At the hearing, Joseph was represented by an attorney, and Joseph and a vocational expert (VE) testified. Joseph also at that

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 6, 7) on the docket.

time amended his alleged onset date to June 21, 2016, to coincide with his 50th birthday (June 22, 1966). Following the hearing, Joseph's claims were denied on October 31, 2018. His request for review by the Appeals Council (AC) was denied on October 30, 2019, making the ALJ's Decision the final decision of the Commissioner. Joseph timely filed the instant civil action seeking review of the ALJ's Decision on December 20, 2019.

## II

At the May 2018 hearing, Joseph was 51 years old and lived with his girlfriend in a house. At the time he filed his applications for DIB and SSI, Joseph claimed back problems and chronic obstructive pulmonary disease (COPD) limited his ability to work. AR 253. At the hearing, Joseph confirmed he was dealing with type 2 diabetes, obesity, chronic obstructive lung disease, sleep apnea, "some" arthritis, and neuropathy. AR 58. He also testified that he could walk about 120 steps before he would have to stop to rest, his neuropathy caused him to feel as if there were rocks in his shoes when standing in place, he could stand 15 minutes before he would have to get off his feet ("probably" two hours total on his feet in an eight-hour day), and he believed a combination of the problems with his back, lungs, and neuropathy limited his ability to stand and walk. AR 69. Joseph stated that "[i]t might have been nine months ago [from May 21, 2018]" when he started using oxygen. AR 59.

He spent his days "[t]rying to walk around a little bit, trying to clean the house when [he could]," he walked to his next-door neighbors' house, and he went to doctors' appointments. He did yard work "in stages" because he could not "drag [his oxygen tank] and mow." AR 62; AR 63. He did not drive as he no longer had a driver's license due to a DUI. He was able to dress and bathe himself. He continued to smoke, "some days four or five cigarettes, and some days none." AR 65.

Lastly, the VE was questioned.

### III

At Step Two of the disability analysis, the ALJ determined Joseph had the following severe impairments: obesity; COPD; sleep apnea; arthritis; neuropathy; and type 2 diabetes mellitus. AR 19. At Step Three, the ALJ explained that Joseph's joint problems did not meet a listing where he was able to ambulate effectively, he did not have the inability to perform fine and gross movements effectively, and an August 2016 examination showed normal range of motion and muscle tone and no evidence of muscle spasms, muscle atrophy, motor weakness, sensation loss, or reflect abnormalities. Joseph similarly did not display the signs and symptoms of a disabling spinal column disorder, and the ALJ cited December 2016 radiographic imaging which showed only very mild bilateral sacroiliac joint osteoarthritis but not the requisite nerve root compression with radiculopathy, spinal arachnoiditis, or severe lumbar spinal stenosis with pseudoclaudication. As for Joseph's COPD, the ALJ stated Joseph "alleges the need for supplemental oxygen only recently," and the ALJ explained that Listing 3.02 (Chronic Respiratory Disorders) was not met because the objective record did not support such a finding. The ALJ similarly determined that Joseph did not display the signs and symptoms of disabling peripheral neuropathy, a disabling pulmonary system disorder, or a disabling impairment associated with diabetes.

The ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is unable to climb ladders, ropes, or scaffolds, he is limited to occasional stooping, crouching, crawling, and climbing stairs or ramps; and, he must avoid exposure to concentrated respiratory irritants.

AR 21.

In the Decision, the ALJ noted Joseph's own reports that he lived independently and was able to perform activities necessary to attend his own personal needs and maintain his residence, his daughter helped him on weekends, he frequently left his residence during the week, he needed help at times to put on his socks and shoes and wash his feet, he was able to prepare meals, he helped with household tasks, and he maintained relationships with his girlfriend and friends.  The ALJ considered objective medical evidence, Joseph's daily activities, the absence of treating, examining, and reviewing physicians' or other medical sources' reports of disability or inability to work, the treatment Joseph received for his impairments, and reviewing State Agency physicians' opinions.  He credited those State Agency opinions of non-disability as supported by the record medical evidence, including the medical documents added to the record after their opinions were rendered, and Joseph's and the VE's testimony.  The ALJ summarized in conclusion:

> All of the claimant's impairments, including nonsevere impairments, have been considered in assessing the claimant as capable of performing this range of light work.  [The assessed RFC] is supported by the objective medical evidence of record, by treatment notes from attending physicians, by other medical reports, and by the claimant's description of his limitations and activities.

AR 22.

### IV

Joseph argues:  the ALJ erred in failing to connect the evidence with his finding of RFC and his finding that Joseph's allegations are inconsistent with the record; and the Commissioner erred in failing to consider new and material evidence submitted to the AC.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v.*

*Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566; § 416.966.[2] The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A); § 42 U.S.C. 1382c(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is

---

[2] The standards for establishing a disability in order to receive DIB and SSI are materially the same. *Compare* 20 C.F.R. § 404.1501 *et seq.* (DIB) *with* 20 C.F.R. § 416.901 *et seq.* (SSI). Thus, the Court may at times only cite to the DIB regulations.

made by using a five-step test. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id*. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Joseph claims error on the ALJ's part at Step Four and error on the Commissioner's part at the AC level.

A

Joseph first argues that the ALJ failed to provide a reasoned explanation connecting the evidence of Joseph's obesity, COPD, chronic respiratory failure, severe sleep apnea, and neuropathic loss of sensation in both lower extremities

6

with his conclusion that Joseph was capable of standing and walking for at least six hours in a workday. Joseph contends that on its face, the record of an extremely obese man who suffers chronic respiratory failure, COPD, severe sleep apnea, and the loss of sensation in both of his feet is entirely consistent with Joseph's testimony that he is unable to sustain prolonged standing and walking. The Commissioner argues the ALJ reasonably accounted for Joseph's obesity where he discussed that obesity several times throughout the Decision and adopted limitations suggested by reviewing doctors who were aware of Joseph's obesity. With regard to the ALJ's subjective symptom evaluation generally, the Commissioner points out that no treating medical source opined Joseph had greater respiratory limitations that the ALJ assessed, no medical source offered an opinion with regard to Joseph's arthritis that was more restrictive than the ALJ's finding, and the ALJ did not mischaracterize Joseph's daily activities or equate them to full time work.

SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms and also the factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8.

With regard to the objective medical evidence, at Step Three, the ALJ considered normal examination results pertinent to Joseph's joint problems, mild results from radiographic imaging pertinent to his spinal column problems, the lack of objective results specified in the relevant listing for chronic respiratory

7

disorders, and abnormal monofilament examination results pertinent to his neuropathy. The ALJ pointed out, with regard to Joseph's neuropathy, that there was no evidence of disorganization of motor function in two extremities, balance problems, or the inability to walk. As for Joseph's sleep apnea, he did not display the signs and symptoms of a disabling pulmonary system disorder as set forth in the relevant listings. There was also no evidence that showed he had "a listed disabling impairment associated with diabetes[.]" AR 21. In his consideration of Joseph's RFC, the ALJ explained that the objective medical evidence was not consistent with Joseph's allegation of disability due, in part, to pain where the medical evidence did not demonstrate significantly limited range of motion, muscle spasms, muscle atrophy, motor weakness, sensation loss, or reflex abnormalities which were associated with intense and disabling pain. The ALJ again acknowledged the evidence of some lower extremity loss of sensation, but again explained that Joseph was not noted to have extreme difficulty walking or balancing. The ALJ found the extent of Joseph's alleged respiratory symptoms were inconsistent with the medical evidence that he required supplemental oxygen "only recently" and his respiratory tests did not show a disabling pulmonary disorder. With regard to the Section 404.1529(c) factors, the ALJ discussed Joseph's daily activities which included the ability to attend to his own personal needs and perform household tasks, his medications were not accompanied by disabling side effects, and his treatment was generally conservative.

The ALJ was required to "sufficiently articulate his assessment of the evidence to assure [the reviewing court] that he considered the important evidence and . . . to enable [the reviewing court] to trace the path of his reasoning." *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999). Here, given Joseph's argument and the record evidence as a whole, the "important evidence" was that of his obesity,

COPD, chronic respiratory failure, severe sleep apnea, and neuropathic loss of sensation in both lower extremities. As illustrated above, the ALJ separately addressed each of those impairments and clearly articulated his reasons for finding the weight of the evidence as to those impairments did not support the extent of limitation Joseph alleged. While the ALJ certainly could have (perhaps should have) more fully articulated his consideration of the combined effects of those impairments, he provided the requisite "minimal articulation" of his justification for rejecting and accepting specific evidence of disability. *See Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (explaining that "an ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability").

For instance, with regard to Joseph's respiratory issues, the ALJ acknowledged those issues and Joseph's need for home oxygen outright, but conveyed the conflict he found between such evidence and the extent of limitation Joseph alleged where: "Despite severe chronic obstructive pulmonary disease and the alleged need for a home oxygen, the claimant continues to smoke cigarettes every day." AR 22. With regard to the ALJ's consideration of Joseph's daily activities, the ALJ concluded that Joseph's description of those activities "belies the allegation of complete and total disability" where he was "able to participate in a wide range of activities during the day" and "demonstrated the ability to live independently." AR 21. The ALJ commented further, "The ability to perform [the identified activities] demonstrates the ability to perform a wide range of light type of work but is inconsistent with the allegation of complete and total disability." AR 22. Joseph argues the ALJ equated his daily activities with an ability to perform light work. While the ALJ's last statement in that regard comes perilously close to doing just that, reading the Decision as a whole reveals the ALJ found that Joseph's activities were not entirely consistent with the level of limitation he

9

alleged. *Orlando v. Heckler*, 776 F.2d 209, 213 (7th Cir. 1985) (explaining that the reviewing court is to "examine the [ALJ's] opinion as a whole to ascertain whether he considered all of the relevant evidence, made the required determinations, and gave supporting reasons for his decisions"). Again, the ALJ also considered the objective medical evidence, the fact that no treating, examining, or reviewing physician or other medical source reported Joseph was unable to work, Joseph did not report disabling side effects due to medication, and Joseph was generally treated with conservative measures. *See Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) ("[I]t is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated"). With regard to the ALJ's consideration of Joseph's obesity, the ALJ stated:

> The claimant is obese; obesity is not a listed impairment, and the claimant's obesity has not been accompanied by another impairment that meets or equals the criteria of a listed impairment (Social Security Ruling 02-1p). The claimant's impairments, even when combined, do not meet or equal the criteria of an impairment listed in Appendix 1, Subpart P, Regulations No. 4.

AR 21. Later, the ALJ articulated that Joseph's physical impairments, "including arthritis, *obesity*, diabetes, COPD, and sleep apnea prevent him from performing strenuous work activities" and his impairments limited him to occasional performance of postural activities including stooping and climbing stairs or ramps. AR 22 (emphasis added). Because the ALJ specifically referenced SSR 02-1p[3] and incorporated limitations on stooping and climbing ramps and stairs in the RFC, the ALJ's consideration of Joseph's obesity was adequate. *See Shumaker v. Colvin*, 632 F. App'x 861, 867 (7th Cir. 2015) (unpublished opinion) (finding the ALJ

---

[3] SSR 02-1p was rescinded in May 2019.

10

adequately accounted for the claimant's obesity where the ALJ considered it, analyzed the effect of it on her RFC by referencing SSR 02-1p, and incorporated several of the limitations described in SSR 02-1p into the RFC).

Moreover, the ALJ's articulation of the limitations caused by his physical impairments (as set forth in the RFC finding) makes obvious he considered the combined effects of obesity and Joseph's other impairments. Notably, the ALJ gave "significant weight" to the reviewing State Agency physicians' opinions wherein Joseph's obesity was identified. AR 22; *see, e.g.*, AR 83 (including reference to a treatment note of abdominal obesity); AR 110 (same). The Seventh Circuit Court of Appeals has determined that even an ALJ's failure to explicitly consider a claimant's obesity did not dictate remand where the claimant's obesity "was factored indirectly into the ALJ's decision as part of the doctors' opinions." *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (noting that the ALJ adopted the limitations suggested by specialists and reviewing doctors who were aware of the claimant's obesity). Finally, the ALJ pointed out that "[n]o treating, examining, or reviewing physician or other medical source has reported that the claimant is disabled or unable to work." AR 22.

In the end, the Court cannot say the ALJ's subjective symptom evaluation was patently wrong as it included both explanation and support. *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *see also Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) ("We give the ALJ's credibility finding special deference"). Nor can the Court say the ALJ erred in his assessment of Joseph's RFC where the ALJ pointed to enough relevant evidence a reasonable mind might accept as adequate to support his conclusions. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (stating "Substantial evidence . . . is more than a mere scintilla . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) ("In fact,

even if reasonable minds could differ concerning whether [a claimant] is disabled, [the reviewing court] must nevertheless affirm the ALJ's decision denying [his] claims if the decision is adequately supported").

**B**

Joseph also argues that the AC erred when it rejected evidence of an MRI dated one week after the ALJ's October 31, 2018 Decision, and the error was not harmless because the additional impairment of a severe spinal stenosis in combination with Joseph's other impairments further strengthens his claim. Joseph contends that had the ALJ been able to analyze the 2018 MRI there is a reasonable probability that he would have found differently on Joseph's SSI claim. The Commissioner first argues that the AC complied with the regulatory framework in evaluating the new evidence, and so there is no basis for the Court to review that discretionary decision. He says even if the Court were to review the AC's finding, the AC did not commit any legal error in finding that the November 2018 MRI was not definitively related to the period at issue. As a policy matter, the Commissioner argues that allowing claimants to obtain imaging days or weeks after an unfavorable ALJ decision would contradict the burden that the regulations place on claimants to provide evidence establishing disability.

The AC denial dated October 30, 2019 provided under "Additional Evidence:"

> You submitted records from ORA Orthopedics, dated November 7, 2018 to November 27, 2018 (5 pages) and dated March 13, 2019 to April 15, 2019 (3 pages). The [ALJ] decided your case through October 31, 2018. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 31, 2018.

12

AR 2.[4] The November 27, 2018 ORA Orthopedics record indicates Joseph's chief complaint at that time was low back pain and left posterior thigh pain, he indicated the pain began three months before (August 2018) without injury, his physical examination was normal, and provides a plan that the doctor recommended Joseph be sent to pain management for epidural injections and the doctor prescribed three medications.[5]

First, the Court finds that the Commissioner is simply wrong in his position that the AC's rejection of the additional evidence – the November 2018 MRI results and doctor's notes explaining the results – was a discretionary decision not subject to court review. 20 C.F.R. § 404.970 and 20 C.F.R. § 416.1470 provide, in relevant part:

> (a) The Appeals Council will review a case if –
> \* \* \*
>> (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and *relates to the period* on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.

20 C.F.R. § 404.970(a)(5); 20 C.F.R. § 416.1470(a)(5) (emphasis added). In *Stepp v. Colvin*, the Seventh Circuit explained that if the AC deems newly submitted evidence "non-qualifying under [20 C.F.R. § 404.970]," the court retained jurisdiction to review that conclusion for legal error. *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015). The *Stepp* court continued:

---

[4] Joseph does not argue that the AC erred in its rejection of the 2019-dated additional evidence.
[5] The doctor prescribed Relafen, Ultram, and Flexeril. AR 35. Relafen is used to relieve symptoms of rheumatoid arthritis or osteoarthritis. https://www.drugs.com/search.php?searchterm=relafen (last visited Nov. 13, 2020). Ultram is used to treat moderate to severe pain.
https://www.drugs.com/search.php?searchterm=ultram&sources%5B%5D= (last visited Nov. 13, 2020).
Flexeril is used together with rest and physical therapy to treat skeletal muscle conditions such as pain, injury, or spasms. https://www.drugs.com/search.php?searchterm=flexeril&sources%5B%5D= (last visited Nov. 13, 2020).

13

> However, if the Appeals Council deemed the evidence new, material, *and time-relevant* but denied plenary review of the ALJ's decision based on its conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was contrary to the weight of the evidence—the Council's decision not to engage in plenary review is discretionary and unreviewable.

*Id.* (internal citation omitted) (emphasis added). Here, the AC clearly stated that the November 2018 MRI and related treatment note were "additional evidence [which] does not relate to the period at issue." AR 2. In other words, the AC deemed that evidence non-qualifying under 20 C.F.R. §§ 404.970(a)(5) and 416.1470(a)(5), and so this Court may review that conclusion for legal error.

The Court agrees with Joseph that the AC took a "wooden approach," such that it legally erred, in deciding that the additional November 2018 MRI evidence did not relate to the period at issue. Plf's MSJ (Doc. 11 at pg. 35). The ALJ's Decision is dated October 31, 2018. The MRI examination is dated just one week later, November 7, 2018. The doctor's treatment note referring to the November 2018 MRI is dated less than one month after that. The MRI impression was of "[m]ultilevel lumbar degenerative disk disease with a new L4-L5 disk protrusion resulting in severe canal stenosis." AR 38. The Commissioner highlights the "new" disk protrusion as support for the AC's conclusion that the MRI evidence was not time-relevant. The Commissioner ignores that part of the impression referring to "degenerative" changes which, at the very least, suggests that "new disk protrusion" did not just happen since October 31, 2018; the impression only provides that the disk protrusion was "new" since the MRI conducted on April 18, 2017 (the specifically identified comparison imaging). While the Court must certainly remain cognizant of the need for efficiency in the "already heavily burdened [Social Security disability] system," Dft's MSA (Doc. 14-1 at pg. 10), the Court cannot accept such reasoning as sufficient to reject Joseph's argument. After

all, 20 C.F.R. §§ 404.970 and 416.1470 necessarily often pertain to evidence dated *after* an ALJ's unfavorable decision as those provisions permit such evidence to be considered by the AC where it is new, material, and time-relevant (as those terms are defined by the controlling authority).

The Court finds the AC's legal error was not harmless as to Joseph's SSI claim. *See Farrell v. Astrue*, 692 F.3d 767, 772 (7th Cir. 2012) (deciding that the AC's legal error in ignoring a doctor's opinion was not harmless error); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("The doctrine of harmless error indeed is applicable to judicial review of administrative decisions"). The Commissioner identifies the 2018 MRI evidence as "new"[6] and makes no argument as to the materiality of that evidence. *See Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011) (failure to address an argument results in a waiver of the issue). The Seventh Circuit has said that evidence is material if there is a "reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Stepp*, 795 F.3d at 725; *see also Musonera v. Saul*, 410 F. Supp. 3d 1055, 1060 (E.D. Wis. 2019) (noting the language used in revised 20 C.F.R. § 404.970(a)(5) – "the evidence did not show a reasonable probability that it would change the outcome of the decision"– simply restates the Seventh Circuit's definition of the term "material").

Here, the Court finds there is a reasonable probability that the November 2018 MRI examination and related treatment note would change the outcome of the Decision. While the ALJ considered a record replete with Joseph's complaints of back pain, the ALJ specifically determined that his spinal column problems did not meet a listing where "radiographic imaging from December 2016 showed only very mild bilateral sacroiliac joint osteoarthritis" and the evidence did not show

---

[6] Evidence is "new" if "it was not in existence or available to the claimant at the time of the administrative proceeding." *Stepp*, 795 F.3d at 725.

that Joseph had "nerve root compression with radiculopathy, spinal arachnoiditis, or severe lumbar spinal stenosis with pseudoclaudication[.]"  AR 20.  The November 2018 MRI again indicated certain mild findings, but the impression was that of "severe canal stenosis."  Whereas the ALJ rejected Joseph's allegations as to the extent of limitation caused by his impairments due, in part, to the fact of conservative treatment and the extent of his daily activities, the doctor in November 2018 recommended sending Joseph to pain management for epidural injections, and Joseph was instructed to modify his activities.

Given the AC's error, the Court recommends remand.

V

For the reasons set forth above, it is recommended that:  1) the Plaintiff's Motion for Summary Judgment (Doc. 10) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 14) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. § 405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation.  FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on November 16, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE